UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL WILLIAMS, | No. 2:16-cv-01377-MCE-CKD |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, WARDEN BRIAN DUFFY, WARDEN JENNIFER BARRETTO, | |
| Defendants. | |

Through the present lawsuit, Plaintiff Darryl Williams ("Plaintiff") seeks to recover damages pursuant to Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA"), as well as under California's Disabled Person and Unruh Civil Rights Acts. Defendant California Department of Corrections and Rehabilitation ("CDCR"), as well as two of its employees, Defendants Brian Duffy and Jennifer Warden, now move to dismiss Plaintiff's Complaint in accordance with Federal Rule of Civil Procedure 12(b)(6) on grounds that it fails to state a claim upon which relief can be granted. As set forth below, Defendants' Motion is GRANTED.[1]

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing in accordance with Local Rule 230(g).

## BACKGROUND

Plaintiff is an inmate housed at CDCR's California Health Care Facility ("CHCF") located in Stockton, California. Pl.'s Compl., ¶ 1. Defendant Brian Duffy was the Warden at CHCF at all times relevant to Plaintiff's complaint, and Defendant Jennifer Warden was Chief Deputy Warden.

According to Plaintiff, he suffers from weakness and partial paralysis of the lower extremities, flat feet, and the effects of a residual bullet which remains lodged in his foot. Id. at ¶ 2. As a result, he cannot walk without the assistance of a walker. Id. Given those disabilities, Plaintiff participates in CDCR's Disability Placement Program ("DPP"), which is designed to protect against any discrimination towards disabled inmates and to ensure that participants are housed in facilities offering them a range of programming equivalent to that available to non-disabled inmates. CHCF is a designated DPP facility. Id. at ¶ 10-11.

On October 9, 2015, Plaintiff claims he was sitting in his walker when it suddenly collapsed, throwing him to the floor. Id. at ¶ 12. As a result, Plaintiff contends that he developed "excruciating pain in his neck, back, and right shoulder." Id. at ¶ 13. Although Plaintiff's Complaint describes the extent of his alleged injuries in some detail, it contains no indication that the walker in question had failed previously, that it was not later replaced and/or repaired, that Plaintiff was left without use of a walker for any appreciable length of time, or that CHCF officials did anything to deny Plaintiff access to prison programs subsequent to his fall. To the contrary, all Plaintiff alleges, without further factual explication, is that Defendants were "deliberately indifferent" to his need to a properly functioning walker and that said indifference both caused his injuries and violated his rights under state and federal laws.

In now moving to dismiss, Defendants assert these conclusory allegations are plainly insufficient to state a viable claim under either the ADA, RA or related California law. In response, Plaintiff appears to argue not so much that the events giving rise to his

injury violated either the ADA or the RA, but instead that the injuries he suffered as a result of his fall were sufficient enough alone to limit his ability to participate in prison programs and therefore subject Defendants to liability.  As Plaintiff states in his Opposition to Defendants' Motion:  "While other, nondisabled inmates are able to fully participate in the prison's programs because they do not require the use of a health care appliance to ambulate, [Plaintiff's] broken walker and nonstop pain in his back, neck and shoulder prevented him from doing what other inmates are capable of doing."  Pl.'s Opp'n, 4:19-23.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

///

pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

To state a viable claim under the ADA, a plaintiff must allege four elements: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services . . . or was otherwise discriminated against by the public entity; and (4) such exclusion, denial . . . or discrimination was by reason of his disability." McGary v. City of Portland, 386 F.3d 1249, 1265 (9th Cir. 2004). The requirements for liability under the RA are essentially the same, except that the RA is targeted to programs receiving federal assistance. Armstrong v. Davis, 275 F.3d 849, 862 n. 17 (9th Cir. 2001). In order to recover money damages under either act, a "plaintiff must prove intentional discrimination on the part of the defendant." Ferguson v. City of Phoenix, 157 F.3d 668, 673-74 (9th Cir. 1998). The standard for intentional discrimination is deliberate indifference. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.

Significantly for purposes of the present motion, both the ADA and the RA were enacted as anti-discrimination statutes, not a means by which every injury suffered by a disabled individual was subject to redress. See, e.g., PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001) ("Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals."). To that end, the ADA, which is modeled on the RA, is entrusted to eliminate discrimination both by "outright intentional exclusion" and "failure to make modifications to existing facilities and practices." Id. at 675; see also 29 U.S.C. § 794(a); Pierce v. County of Orange, 526 F.3d 1190, 1216 n.27 (9th Cir. 2008) (RA). An individual is excluded from participation in, or denied the benefits of, a public program if "a public entity's facilities are inaccessible or unusable by individuals with disabilities." Daubert for Lindsay Unified School Dist., 760 F.3d 982, 985 (9th Cir.

2014). This emphasis on systematic exclusion is underscored by the ADA's implementing regulations, which significantly for purposes of the present case make it clear that a violation does not occur every time there is a temporary loss of accessibility as a result of equipment malfunction. To that end, 28 C.F.R. § 35.133 provides in pertinent part that:

> (a) A public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.
>
> (b) This section does not prohibit isolated or temporary interruption in service or access due to maintenance or repairs.

Even more illuminating is the appendix to the regulations published by the U.S. Department of Justice. The appendix explains unequivocally that the ADA cannot possibly guarantee that mechanical devices will never fail:

> It is, of course, impossible to guarantee that mechanical devices will never fail to operate. Paragraph (b) of the final regulation provides that this section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs. This paragraph is intended to clarify that temporary obstructions or **isolated instances of mechanical failure would not be considered violations of the Act** or this part. However, allowing obstructions or out of service" equipment to persist beyond a reasonable period of time would violate this part, as would repeated mechanical failure due to improper or inadequate maintenance.

28 C.F.R. Pt. 35, App'x B (emphasis added)

Based on this authority, Defendants argue that a disability discrimination claim cannot be based on a one-time failure of a piece of equipment used to assist a disabled person. The Court agrees, and Plaintiff's claims as pled fail on this basis.

According to Plaintiff's Complaint, a walker he was using malfunctioned and collapsed on one occasion. This is exactly the type of "isolated instance of a mechanical failure" that has been recognized as insufficient to constitute a violation of either the ADA or the RA. As indicated above, there is absolutely no indication in the Complaint that Plaintiff's walker had failed previously, that Plaintiff was not provided a replacement

walker, or that CHCF took any related steps that deprived Plaintiff, after his fall, of the ability to participate in prison programs. Consequently, Plaintiff's allegations implicating the ADA and the RA as set forth in Counts One and Two of the Complaint, fail.

Amazingly, Plaintiff nonetheless claims he is subject to the protections of the ADA and RA because the fact that his walker broke caused him to sustain injuries which, in turn, "prevented him from doing what other inmates are capable of doing." Pl.'s Opp, 4:21-23. According to Plaintiff's logic, then, he is entitled to relief if his injuries were severe enough to limit his ability to participate in prison programs after the fall, irrespective of whether the event giving rise to the injuries violated either statute. As Defendants point out, there is no authority for this startling proposition. If one were to accept Plaintiff's argument, for example, a disabled individual who trips for any reason upon entering a public building could assert an ADA violation as long as the injuries he or she sustained were severe enough to limit access to government programs. This cannot be the law; otherwise, as Defendants point out, an ADA and RA would be transmuted from the anti-discrimination measures they are to something akin to worker's compensation for disabled individuals. That is nonsensical.

Plaintiff's claims under California's disability discrimination claims, as pled in the Third and Fourth Counts, are no more successful. The California Disabled Persons Act provides the disabled with "the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Cal. Civ. Code § 54(a). The Act also guarantees individuals with disabilities with equal access "to accommodations. . . places of accommodation, amusement, or resort, and other places to which the general public is invited. . . " Id. at § 54(a)(1). The focus of the Disabled Persons Act, then, is on physical access to public places. Turner v. Ass'n of Am. Medical Colleges, 167 Cal. App. 4th 1401, 1412 (2008). Here, Plaintiff has not alleged he was denied any such physical access, and Defendants' Motion is well taken as to the Third Count.

For his Fourth and final Count, Plaintiff alleges a violation of the Unruh Act, which provides that "[a]ll persons within the jurisdiction of this State are free and equal" and irrespective of disability "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).  In the context of disability discrimination like that alleged here, a violation of § 51 can be established in two ways.  First, under the terms of the statute a violation of the ADA "shall also constitute a violation of this section."  Id. at § 51(f).  Here, as set forth above, the Complaint fails to state any such predicate ADA violation. Second, to the extent no ADA violation is pled, an Unruh Act claim lies only upon a showing of intentional discrimination.  Munson v. Del Taco, Inc., 46 Cal. 4th 661, 665 (2009).  In an apparent attempt to satisfy that liability prong, Plaintiff simply states in boilerplate fashion that Defendants "knowingly discriminated against him by issuing him a defective walker" and thereby "denied him full and equal access to CHCF."  Pl.'s Compl, ¶ 50.  The Complaint provides no further explication as to how the mechanical failure of Plaintiff's walker had anything to do with intentional conduct on Defendants' part.

Under the rationale of the Supreme Court's decisions in Twombly and Iqbal, supra, Plaintiff cannot simply assert that Defendants acted "knowingly," as he does here. Instead, he must plead some facts that support a fair inference that Defendants acted in a knowing fashion.  See Iqbal, 556 U.S. at 681-682 (a mere "formulaic recitation" of the elements of a claim is insufficient to survive a motion to dismiss.).  This is true even in the context of a motion to dismiss under Rule 12(b)(6), where a court must generally accept as true the factual allegations contained in the complaint.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to factual contest.  Iqbal, 556 U.S. at 686.

///

///

Consequently, Plaintiffs have also failed to state a viable claim under the intentional prong of Unruh Act liability.[2]

While the Court notes that Defendants claim Eleventh Amendment immunity under both Plaintiff's ADA and state law claims, because Plaintiff has failed to make even a preliminary showing of liability under the facts as pled, resort to Eleventh Amendment jurisprudence is not necessary to dismiss Plaintiff's claims as currently pled, and the Court declines to do so.

As a final matter, the individual liability of Defendants Duffy and Barretto must be addressed. Plaintiffs may sue only a public entity like CDCR for violations of the ADA and the RA, not government officials in their individual capacities. See Vinson v. Thomas, 288 F.3d 1145, 1155-56 (9th Cir. 2002). Instead, the proper defendant is the responsible public entity. Gonzales v. Dept. of Real Estate, No. 2:15-cv-2448 GEB GGH PS, 2016 WL 3745727 at *4 (E.D. Cal. February 1, 2016). Consequently, Plaintiff's ADA and RA claims fail as against Duffy and Barretto for that reason as well.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 6) is GRANTED in its entirety. While the Court has strong reservations about whether the deficiencies of the Complaint can be rectified through amendment under the circumstances, because no prior leave has been accorded, one opportunity to amend will be permitted, except as to the First and Second Counts insofar as they pertain to Defendants Duffy and Barretto. As to those claims, since individual liability under the ADA and RA is precluded as a matter of law, leave to amend is not granted.

---

[2] It should be noted that both the ADA and RA also require, as indicated above, a showing of intentional discrimination in order to recover money damages under either Act. Ferguson, 157 F.3d at 674. Since Plaintiff has failed to identify acts giving rise to potential liability under the ADA or RA in the first place, however, deciding whether the insufficiently pled acts were intentional was not necessary in adjudicating the sufficiency of the ADA and RA claims for pleadings purposes. Nonetheless, for the same reasons that no intentional discrimination has been identified for Unruh Act purposes, no adequate showing has been made for liability under the ADA or RA, either.

1 | Any amended pleading must be filed not later than ten (10) days after the date this Memorandum and Order is electronically filed.  If no amended complaint is timely filed, the causes of action dismissed by virtue of this order will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated:  March 13, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE