UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DARRYL WILLIAMS,

    Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, WARDEN BRIAN DUFFY, WARDEN JENNIFER BARRETTO,

    Defendants.

No. 2:16-cv-01377-MCE-CKD

**MEMORANDUM AND ORDER**

Through this action, Plaintiff Darryl Williams ("Plaintiff") seeks to recover damages under Title II of the Americans with Disabilities act ("ADA") and the Rehabilitation Act of 1973 ("RA"), as well as under California's Disabled Person and Unruh Civil Rights Acts. Defendant California Department of Corrections and Rehabilitation ("CDCR"), as well as two CDCR employees, move to dismiss Plaintiff's First Amended Complaint ("FAC") in accordance with Federal Rule of Civil Procedure 12(b)(6) on grounds that it fails to state a claim upon which relief can be granted. For the reasons set forth below, Defendant's Motion is GRANTED and Plaintiff's FAC is DISMISSED without leave to amend.[1]

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

1

# BACKGROUND[2]

Plaintiff is an inmate housed at CDCR's California Health Care Facility ("CHCF") located in Stockton, California. Pl.'s FAC ¶ 1. Defendant Brian Duffy was the Warden at CHCF at all times relevant to Plaintiff's complaint, and Defendant Jennifer Barretto was the Chief Deputy Warden.

According to Plaintiff, he suffers from weakness and partial paralysis of the lower extremities, flat feet, and the effects of a residual bullet which remains lodged in his foot. Id. at ¶ 2. As a result, he cannot walk without the assistance of a walker. Id. Given those disabilities, Plaintiff participates in CDCR's Disability Placement Program ("DPP"), which is designed to protect against discrimination towards disabled inmates and to ensure that participants are housed in facilities offering them a range of programming equivalent to that available to non-disabled inmates. CHCF is a designated DPP facility. Id. at ¶¶ 10-11.

On October 9, 2015, Plaintiff claims he was utilizing his walker when it suddenly collapsed, causing him to fall to the floor. Id. at ¶ 12. Plaintiff alleges this was the second walker of the same make and model provided to Plaintiff that had "failed in such spectacular fashion." Id. As a result of the fall, Plaintiff contends that he developed "excruciating pain in his neck, back, and right shoulder." Id. at ¶ 14. Plaintiff alleges, without further factual explication, that CDCR acted with deliberate indifference to his medical needs by providing him with a walker that failed and then replacing it with a second, defective walker. Id. at ¶ 23. Plaintiff also claims, again without factual explication, that Duffy and Barretto "knowingly discriminated" against Plaintiff by allegedly having knowledge that the walker was defective and issuing Plaintiff the same walker a second time. Id. at ¶¶ 41, 49.

///

---

[2] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's FAC, ECF No. 16, and from a general review of the docket.

Defendants assert these conclusory allegations are insufficient to state a viable claim under the ADA, the RA, or the related California laws. Defs.' Mot., ECF No. 17. In response, Plaintiff claims he is subject to the protections of the ADA and the RA because his walker broke and caused him to sustain injuries which, in turn, "deprived Williams of participation in and the benefits of the prison's programs." Pl.'s Opp., ECF No. 20, at 4:18-23. Plaintiff appears to argue not so much that the events giving rise to his injury violated either the ADA or the RA, but instead that the injuries he suffered as a result of his fall were sufficient enough alone to limit his ability to participate in prison programs and therefore subject Defendants to liability. As Plaintiff states in his Opposition to Defendants' Motion: "While other, nondisabled inmates are able to fully participate in the prison's programs because they do not require the use of a health care appliance to ambulate, [Plaintiff's] broken walker and nonstop pain in his back, neck and shoulder prevented him from accessing all areas of the institution." Id. at 4:23-5:1.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion

3

couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that

4

"the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

Defendants raise one primary argument for dismissal of Plaintiff's FAC: that Plaintiff has again failed to state claims upon which relief may be granted. Indeed, in dismissing Plaintiff's original complaint (ECF No. 15), the Court expressed serious reservations concerning whether the deficiencies of the complaint could be rectified through amendment, but nevertheless gave Plaintiff an opportunity to amend. Plaintiff has now done so, but has failed to cure those deficiencies.

In amending the complaint, Plaintiff alleges that his fall while using a facility-provided walker on October 9, 2015, was not the only fall of its type. Rather, he alleges that this was the second walker of the same make and model that had been provided by the CHCF that had failed and collapsed. ECF No. 16, at ¶ 12. Plaintiff alleges that the CHCF acted with deliberate indifference to his medical needs because it provided him with a walker that failed, and subsequently replaced that walker with another defective walker, thus violating his rights under Title II of the ADA and the RA, as well as under California's Disabled Person and Unruh Civil Rights Acts. Id. at ¶ 23. There is no indication in Plaintiff's FAC as to when the previous failure of the walker occurred or under what circumstances. Moreover, Plaintiff's FAC is devoid of any facts demonstrating Defendants' knowledge of any defect in the walker.

As previously conveyed in the Court's order dismissing Plaintiff's initial complaint, in order to state a viable claim under the ADA, a plaintiff must allege four elements: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or

receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services . . . or was otherwise discriminated against by the public entity; and (4) such exclusion, denial . . . or discrimination was by reason of his disability." McGary v. City of Portland, 386 F.3d 1249, 1265 (9th Cir. 2004). The requirements for liability under the RA are essentially the same, except that the RA is targeted to programs receiving federal assistance. Armstrong v. Davis, 275 F.3d 849, 862 n. 17 (9th Cir. 2001). In order to recover monetary damages under either act, a "plaintiff must prove intentional discrimination on the part of the defendant." Ferguson v. City of Phoenix, 157 F.3d 668, 673-74 (9th Cir. 1998). The standard for intentional discrimination is deliberate indifference. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.

Significantly for purposes of the present motion, both the ADA and the RA were enacted as anti-discrimination statutes, not a means by which every injury suffered by a disabled individual was subject to redress. See, e.g., PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001) ("Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals."). The ADA, which is modeled after the RA, was enacted to eliminate discrimination both by "outright intentional exclusion" and "failure to make modifications to existing facilities and practices." Id. at 675; see also 29 U.S.C. § 794(a); Pierce v. County of Orange, 526 F.3d 1190, 1216 n.27 (9th Cir. 2008) (RA). An individual is excluded from participation in, or denied the benefits of, a public program if "a public entity's facilities are inaccessible or unusable by individuals with disabilities." Daubert for Lindsay Unified School Dist., 760 F.3d 982, 985 (9th Cir. 2014). This emphasis on systematic exclusion is underscored by the ADA's implementing regulations, which make it clear that a violation does not occur every time there is a temporary loss of accessibility as a result of equipment malfunction. To that end, 28 C.F.R. § 35.133 provides in pertinent part that:

(a) A public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.

(b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs.

Even more illuminating is the appendix to the regulations published by the U.S. Department of Justice. The appendix explains unequivocally that the ADA cannot possibly guarantee that mechanical devices will never fail:

> It is, of course, impossible to guarantee that mechanical devices will never fail to operate. Paragraph (b) of the final regulation provides that this section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs. This paragraph is intended to clarify that temporary obstructions or isolated instances of mechanical failure would not be considered violations of the Act or this part. However, allowing obstructions or "out of service" equipment to persist beyond a reasonable period of time would violate this part, as would repeated mechanical failures due to improper or inadequate maintenance.

28 C.F.R. Pt. 35, App'x B

While the Plaintiff's FAC does indicate the walker provided to Plaintiff had failed once before the October 9, 2015 fall, there are no dates specified or circumstances provided regarding that first failure. Instead, the FAC only states "[t]his was the second walker of the same make and model provided to Williams that failed in such spectacular fashion." Pl.'s FAC, ECF No. 16, at ¶ 12. Plaintiff has therefore failed to provide any facts that would demonstrate that he was excluded from participation in or denied the benefits of the CDCR's services or was otherwise discriminated against by the CDCR. Instead, Plaintiff simply claims his protections under the ADA and the RA were violated because the fact that his walker broke caused him to sustain injuries which, in turn, "deprived Williams of participation in and the benefits of the prison's programs." Pl.'s Opp., ECF No. 20, at 4:18-23. According to Plaintiff's logic, then, he is entitled to relief if his injuries were severe enough to limit his ability to participate in prison programs after the fall, irrespective of whether the event giving rise to the injuries violated either statute.

1 As Defendants point out, there is no authority for this startling proposition. If one were to
2 accept Plaintiff's argument, for example, a disabled individual who trips for any reason
3 upon entering a public building could assert an ADA violation as long as the injuries he
4 or she sustained were severe enough to limit access to government programs. This
5 cannot be the law; if it were, as Defendants point out, the ADA and the RA would be
6 transmuted from the anti-discrimination measures to something akin to worker's
7 compensation for disabled individuals. That is nonsensical.

Plaintiff's claims under California's disability discrimination claims, as pled in the FAC's Third and Fourth Counts, are no more successful. The California Disabled Persons Act provides the disabled with "the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Cal. Civ. Code § 54(a). The Act also guarantees individuals with disabilities equal access "to accommodations. . . places of accommodation, amusement, or resort, and other places to which the general public is invited. . . ." Id. at § 54(a)(1). The focus of the Disabled Persons Act, then, is on physical access to public places. Turner v. Ass'n of Am. Medical Colleges, 167 Cal. App. 4th 1401, 1412 (2008). Here, Plaintiff has not alleged he was denied any such physical access, and Defendants' Motion is well taken as to the Third Count.

For his Fourth and final Count, Plaintiff alleges a violation of the Unruh Act, which provides that "[a]ll persons within the jurisdiction of this State are free and equal" and irrespective of disability "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). In the context of disability discrimination, a violation of § 51 can be established in two ways. First, under the terms of the statute a violation of the ADA "shall also constitute a violation of this section." Id. at § 51(f). Here, as set forth above, the Complaint fails to state any such predicate ADA violation. Second, to the extent no ADA violation is pled, an Unruh Act claim lies only upon a showing of intentional

discrimination. Munson v. Del Taco, Inc., 46 Cal. 4th 661, 665 (2009). In an apparent attempt to satisfy that standard, Plaintiff simply states in boilerplate fashion that Defendants "knowingly discriminated against Williams" by "repeatedly issuing him defective walkers and denied his rights under ADA and denied him full and equal access to CHCF." Pl.'s FAC, ¶ 49. The Complaint provides no further explication as to how the mechanical failure of Plaintiff's walkers had anything to do with intentional conduct on Defendants' part.

Plaintiff was previously granted leave to amend, and was not able to cure the defects in the Complaint. Under the circumstances, it appears clear that Plaintiff cannot plausibly allege any facts that would establish Defendants' liability under the ADA, RA, or associated California law, and for that reason, the Court finds further amendment would be futile.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 17) is GRANTED without leave to amend. Because Plaintiff will not be permitted further leave to amend, the Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: December 4, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE